## No. 12,053.

ARMOUR AND COMPANY OF DELAWARE, ET AL. *v.* McPHEE
AND McGINNITY COMPANY, ET AL.

Decided February 18, 1929.

Messrs. YEAMAN, GOVE & HUFFMAN, Mr. SHERMAN A. SUTLIFF, for plaintiffs in error.

Messrs. BARTELS & BLOOD, Mr. JAMES A. WOODS, Messrs. MELVILLE, MELVILLE & TEMPLE, Messrs. GABRIEL, MILLS

& MILLS, Miss MARY F. LATHROP, Mr. WILLIAM H. WADLEY, Messrs. ROBINSON & ROBINSON, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE action is to enforce a lien which subdivision II of chapter 143, C. L. 1921, gives to mechanics and others. It was brought by McPhee & McGinnity, material men, against Armour & Company, a Delaware corporation, owner of the premises on which a hog cooler building was erected for it by Patrick J. Sullivan, principal contractor, under a written contract between them; and, as there was a mortgage on the premises, the mortgagees were joined as defendants. There were other claimants of liens and they were made codefendants, so that all interested parties might be, as they were, heard and their rights determined in the one action. The parties are aligned here, as practically they were below, all lien claimants being plaintiffs, and Armour & Company, the owner, and the two banks, mortgagees, defendants. The trial court found the issues, both of law and fact, for the plaintiffs and adjudged the amount of their respective claims against the owner to be liens upon the premises. Defendants are here with this writ of error.

Twenty-seven assignments of error are filed. They are not separately treated by the respective counsel, but are discussed in the briefs under general headings which, as stated by defendants, may thus be summarized: (a) Our mechanics' lien statute, section 6442, et seq., C. L. 1921, is a derivative, not a direct or independent, statute. (b) Section 6460, as to the effect of a waiver of liens, is unconstitutional. (c) The lien claimants waived their right to liens. We shall discuss these controlling propositions in the order stated and in the course of the

opinion, if we deem amplification or subdivision necessary, that course will be pursued as the parties themselves have done in their respective briefs.

The material provisions of section 6442, C. L. 1921, are that mechanics, material men, contractors, subcontractors, and others who perform labor upon, or furnish materials to be used in the construction of, any building or structure or improvement, upon land, shall have a lien upon the property, including the land, upon which they have rendered services or bestowed labor, or for which they have furnished materials, whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise, for such work, labor or services by each respectively, whether done or furnished or rendered at the instance of the owner of the structure or his agent; and every contractor, architect, engineer, subcontractor or builder, agent or other person having charge of such construction shall be held to be the agent of the owner for the purposes of this act. In case of a contract for the work between the owner and a contractor, the lien shall extend to the entire contract price and such contract shall operate as a lien in favor of all persons performing labor or services or furnishing materials as provided under contract, express or implied, with the contractor, to the extent of the whole contract price, and after such liens are satisfied, then as a lien for any balance of such contract price in favor of the contractor. "All such contracts shall be in writing when the amount to be paid thereunder exceeds five hundred dollars, and shall be subscribed by the parties thereto, and the said contract, or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a statement of the general character of the work to be done, the total amount to be paid thereunder, together with the times or stages of the work for making payments, shall, before the work is commenced, by the owner or reputed owner be filed in the

office of the county recorder of the county where the property * * * is situated; and in case such contract is not filed, as above provided, the labor done and materials furnished by all persons aforesaid before such contract or memorandum is filed, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof.''

Section 6460 reads: ''No agreement to waive, abandon or refrain from enforcing any lien provided for by this act shall be binding except as between the parties to such contract; and the provisions of this act shall receive a liberal construction in all cases.''

Mechanics' lien statutes in this country are based upon at least two different theories or principles. They are commonly designated as direct, or independent, lien statutes; and derivative, or dependent, lien statutes. The rights of a derivative lien claimant grow out of the contract between the owner and the principal contractor. Direct liens are created by the statutes themselves and are independent of the contract between the owner and the principal contractor. The only dependence that can be said to inhere in a direct lien is that the condition of its enforcement depends upon the performance of labor or the furnishing of material that go into a structure. It is the contention of the plaintiffs here that our statute is a direct lien statute while the defendants contend that it is indirect. The plaintiffs here rely upon the proposition that our statute, being a direct lien statute, its provisions with reference to the contract between the owner and the principal contractor are matters of defense to the owner and if the owner follows and complies with these provisions he may defeat liens of laborers, material men or subcontractors which otherwise they would have. As applicable to the present controversy the plaintiffs assert and the defendants deny, that the defendant Armour & Company did not comply with the provisions of our statute, compliance with which by it would have defeated the lien claimants, or limited them by the contract be-

tween Armour & Company and Sullivan, and the conclusion the plaintiffs draw is that this state of affairs makes of the subcontractors, material men and laborers principal contractors. Plaintiffs further assert, as above stated, that in this case these contract provisions of the statute are matters of defense to be established by the owner to defeat the direct lien otherwise given to the plaintiffs, citing *Kennicott-Patterson T. Co. v. Modern S. & R. Co.*, 26 Colo. App. 135, 141 Pac. 144. With this general statement we proceed to consider the three propositions above announced.

1. The defendants first contend that plaintiffs may not recover whether the lien created by section 6442 is a direct, or a derivative or dependent, lien. Still in an exhaustive argument they endeavor to show that the lien is derivative. If so, and if it be a controlling question here—and we doubt if it is—we observe that a derivative lien confers upon its claimant only such rights as the contract between the owner and the principal contractor contemplate. The rights are limited by the contract. On the other hand a direct lien, given by statute, is one not dependent upon a contract between the owner and the principal contractor, but is one whose existence and virtue by the terms of the statute spring directly therefrom, irrespective of the contract. True, this section says that where there is a contract between the owner and a principal contractor, that is, in such cases, the lien shall extend to the entire contract price and such contract shall operate as a lien in favor of subcontractors, material men and others to that extent. From this language defendants draw the conclusion that our statute of 1899, now in force, itself in terms makes this lien derivative, not direct. Our Court of Appeals in *Great Western Co. v. Gilcrest Co.*, 25 Colo. App. 1, 136 Pac. 553, in discussing the scope and meaning of the act of 1889, which, as to the point now under discussion, is in the identical language of our 1899 act, now in force, says, on page 7 of the opinion, that section 4025, Revised Statutes

1908, "gives to subcontractors and material men a direct lien, regardless of the state of the account between the owner and the contractor." And at page 15 the court adds: "The first paragraph of section 4025 gives a direct lien in plain language." As to the language in the second paragraph, on which the defendants rely here, the court says that the provision is that, in case of a contract, not as the *result* of a contract, the lien is limited to the contract price whatever it may be, if the owner complies with those provisions of the contract incumbent upon him. It would be strange, indeed, if our general assembly should, in the first paragraph of a section of an act, deliberately and plainly give to subcontractors, material men and laborers, a direct lien, and then in the second paragraph, immediately following and in the same section, destroy it by making the lien derivative and dependent wholly upon contract. This decision of the Court of Appeals might have been, but was not, reviewed by this court. It has been generally recognized by the profession and observed by parties engaged in the erection of buildings. We are not disposed to set it aside by holding that section 6442 does not give a direct lien. This Gilcrest case was referred to by our Court of Appeals in a later case, *Kennicott-Patterson T. Co. v. Modern Co., supra,* and the opinion, while not expressly commenting upon the character of the lien, impliedly recognizes that our statute is a direct lien statute.

But under the facts of this case the liability of the defendants to these plaintiffs, subcontractors, material men and laborers, for the unpaid balance of their claims, not merely for the balance due from the owner to the principal contractor Sullivan, is by section 6442 fixed and measured by the owner's failure seasonably, or at all, to file with the county recorder the contract or a memorandum thereof, which must include certain prescribed things in order to relieve the owner from the liability therein imposed for his failure to file the prescribed contract. For such failure all claims for materials furnished and

labor done are deemed to have been, as the statute expressly says, furnished and done at the instance of the owner and the lien attaches to the full value of such labor and material, irrespective of the state of the account between the owner and the principal contractor.

We have just said that no such contract or memorandum thereof as this statute prescribes was seasonably filed. What purports to be a contract was filed for record with the county recorder. It was incumbent upon the owner to escape liability for materials furnished and labor performed in amounts beyond the contract price, that such a contract should be filed. The statute expressly provides that if there is a failure in this respect, material men and laborers shall have a lien for the full value of the labor and materials which the law deems were furnished and done at the personal instance of the owner, even though it might exceed the contract price.

The parties disagree as to whether or not such a contract was filed. An instrument was filed by the owner with the county recorder of the county. It purported to be a contract between the owner and Sullivan, the principal contractor; not a memorandum of the written contract, but the written contract itself. The instrument as filed, Exhibit A, is an elaborate paper. After purporting to describe in general terms the general nature and character of the work, and giving a description of the lands upon which the proposed structure is to be erected, and after stating that Sullivan agrees to furnish all labor and material necessary to complete such work, adds: "According to the plans, specifications and drawings made by R. C. Clark, architect, which are hereby made a part of this contract." The plans and specifications were by the contract itself thus made a substantial part thereof. They were not filed as a part of the written contract, or as a separate instrument or in any way condensed, or referred to other than by the above excerpt. The statutory requirement, though it may not necessitate the filing or recording of the entire plans and specifications,

word for word, yet the substance thereof should have been, but was not, incorporated in the written instrument that was filed. It will not do to say that the subcontractors, material men and laborers, or some of them, knew of the existence of the plans and specifications, because the statute makes imperative the filing of the contract or a memorandum thereof and this requires that the filing shall not· be a partial, but ·a complete, filing. Since the plans and specifications, or drawings, which are made a part of the contract, are just as essential as any other part of the instrument, either the plans and specifications in their entirety, or in substance, should have been so filed, and neither was done in this case.

California has a similar statutory provision. The object in requiring such a contract to be filed, where the contract price exceeds $500 under our statute, is to protect the owner against liens over and above his contract price and to give general information to all persons who may desire to furnish materials or perform labor on the structure. In the case of *Willamette Company v. Los Angeles College Co.*, 94 Cal. 229, 29 Pac. 629, which was an action for foreclosure of several mechanics' liens, the contract between the owner and the builder was in writing and what purports to be the agreement was filed in the proper office. The instrument filed made reference, as is the case here, to certain drawings and specifications, but they were not filed. The Supreme Court and other courts of California hold that the insertion of a clause in a contract above the drawings and specifications, which are made a part of the contract, thereby become an essential part of the contract and as material as is the price of the work, or the terms of payment, and the courts say that if it is desired that the contract be the basis of the owner's liability, or the measure of the right of recovery, the plans and specifications should be filed in the· recorder's office and a failure to do so destroys the validity of the contract. This was followed by a number of other cases to the same effect, among them: *Yancy v. Morton,*

94 Cal. 558, 29 Pac. 1111; *Butterworth v. Levy*, 104 Cal. 506, 38 Pac. 897; *Wood, et al. v. O. & B. Co.*, 107 Cal. 500, 40 Pac. 806; *Pierce v. Birkholm, et al.*, 115 Cal. 657, 47 Pac. 681; *West Coast L. Co. v. Knapp*, 122 Cal. 79, 54 Pac. 533; *Burnett v. Glas*, 154 Cal. 249, 97 Pac. 423, and *Bird v. American Surety Co.*, 175 Cal. 625, 166 Pac. 1009, the court in the last case saying that plans and specifications forming a part of the contract must be filed, and for a failure by the owner to file them as a part of the contract makes the owner liable to material men, laborers and subcontractors, the same as if their contract was direct with the owner. For these reasons we are obliged to hold that this instrument as filed was neither complete as a contract nor as a memorandum thereof. It was fatally defective. No virtue results from the filing of such an instrument without the plans and specifications. The liability of the owner is fixed by the statute and that liability is the same as it would be between the owner and one whom he himself directly employs, or deals with. *Curtis v. Nunns*, 54 Colo. 554, 131 Pac. 403; *Laverents v. Craig*, 74 Colo. 297, 225 Pac. 250; *Kennicott-Patterson Co. v. Modern Co., supra.*

A further objection by the plaintiffs is that the instrument was not filed at all with the recorder, in that the document itself was filed for record and thereafter recorded in the records of the county recorder and not left with that officer permanently, but the original was withdrawn after the same was recorded. It is not necessary to pass upon this question, although it seems to be more or less technical, since we have held the instrument as filed was not, in substance, what the statute requires. Therefore, by the statute, plaintiffs are principal contractors.

2. Our conclusion on the first proposition above discussed makes it unnecessary to pass upon the assignment that section 6460, which says that no agreement to waive a lien provided by the mechanics' lien act, shall be binding except between the parties to such contract, is uncon-

stitutional. The fact, therefore, that this contract between Armour & Company and Sullivan, the principal contractor, contains a waiver by Sullivan for himself and all subcontractors, material men and laborers—even if the statute restricting it to the immediate parties thereto is unconstitutional, as to the defendant owner, which we do not say is true—would not relieve the owner of his liability to those who furnish materials or perform labor, because the owner could assert such a defense only if he complies with all of the provisions of the contract and of the statute relating to such liability; and since we have already determined that the owner has not in this case shown such compliance, but there was an entire failure to file with the county recorder such a contract as the statute provides for, it is not in a position to assert the invalidity of the waiver provision of the statute.

3. What we have already said indicates our conclusion as to the assertion of the defendants that the lien claimants have waived their right to liens. One additional specific contention of the defendants is that the plaintiffs here are estopped to assert and, therefore, have lost their liens because, among other things, they were guilty of laches in failing to protect themselves as they might have done under section 6443, C. L. 1921, by giving personal notice to the owner of their claims against the principal contractor. The section of the statute relied upon is not a mandatory, but it is a permissive, provision, as counsel for defendants themselves in their brief admit. We find nothing in the record to justify the defendants' argument upon this point. There is nothing to show that the defendants either took any positive action or refrained from taking action as the result of the omission by plaintiffs to give such statutory notice. The defendants in nowise were prejudiced thereby. But aside from this the defendants' own failure to comply with the statute in respect to the filing of the written building contract disentitles them to be heard with the assertion of this alleged estoppel. The statute says that in certain circum-

stances subcontractors, material men and laborers may, not that they must, give such notice. Section 6443, C. L. 1921 is the same as section 4026, R. S. 1908.

It would serve no useful purpose to incorporate in this opinion a long list of authorities that might be cited in favor of our conclusion. In 40 C. J. p. 47, sec. 6, et seq., will be found a collection of the cases. At page 148, sections 166 and 167, the author collects many of them upon the subject of derivative and direct liens. Perhaps the leading case in this country on the subject of direct liens and the construction of statutes similar to ours is *Jones v. Great Sourthern Fireproof Hotel Co.,* 86 Fed. 370. The Supreme Court of the United States in 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778, approved of this case and the opinion of Mr. Justice Harlan, in closing, says: "The reasons in support of the constitutionality of the statute are cogently stated in the able and elaborate opinion of Judge Lurton * * *,'' and concludes with this rather unusual statement of that high tribunal: "As the reports of the decisions of the Circuit Court of Appeals are accessible to all, we will not encumber this opinion with a restatement of the grounds, so fully set forth by that court, on which the validity of the statute must be sustained. We content ourselves with referring to its opinion, and with citing, in the margin some authorities which, in our judgment, support the views expressed by the Circuit Court of Appeals." We are satisfied with our conclusions as heretofore stated. We desire to acknowledge our indebtedness to the counsel on both sides for their able, exhaustive and eminently fair briefs.

There remains to be considered the claims of two of the material men. In the case of Midwest Steel & Iron Works Company, one of the lien claimants, the defendants make the point that this claim, which was approved by the trial court, should be rejected for reasons not involving the merits. At the time the lien claim was filed in the recorder's office by this domestic corporation its

charter had expired. Defendants say that the filing of a lien claim by a non-existing corporation is not a compliance with the statute. The district court at first took this view and intimated that the lien claim could not be allowed, but upon further consideration reached the conclusion that since the company was a legal corporation at the time that it made its contract for furnishing supplies to the principal contractor, and at the time that the supplies were actually delivered to him, the company's legal existence then is unquestioned. We think the district court's final conclusion is right. The claim as a matter of fact was filed by, or upon the order of, the persons who were directors of the company at the time its contract was made with the principal contractor, and at the time the material was furnished, and who were still directors at the time of the expiration of its charter. By the provisions of our statute these directors are made statutory trustees of the corporation, not for the purpose of continuing its business but for the purpose of winding up its affairs. They filed, or caused to be filed, the lien statement which our statute in such cases provides for. Whether they used the name of the corporation or their own names is immaterial. The fact is that the lien statement was filed by or under the authority of those who by law might file it as a part of their duties in collecting or enforcing claims of the defunct corporation.

Another plaintiff whose claim was made a lien is one Vosmer. His claim against the principal contractor Sullivan was allowed by the district court and the judgment manifesting the same was declared to be a lien against the premises. After the record was lodged in this court and the cause was submitted upon briefs and oral argument was had, the district court filed, or caused to be filed, in this court a document, or a copy, theretofore filed in the district court, which led it to ask, and it did ask, that this cause, in so far as it affects the claim of Vosmer, be remitted to the district court for further investigation, since a showing had been made that perjury and other

misconduct on the part of Vosmer caused the judgment in his favor to be rendered. Thereupon this cause, in so far as it affects Vosmer, was remanded to the district court for further hearing. A notice was served upon Vosmer and he appeared in court and a hearing was had which resulted in the setting aside of the previous judgment of the court of allowance of Vosmer's claim and constituting the same a lien, and, in lieu thereof, a judgment was rendered in favor of the defendants and against plaintiff Vosmer dismissing his lien action. Vosmer has filed in this court what purports to be an abstract of record and assignment of errors to this judgment against him. Nothing further has been done in his case. This cause in all respects, except in so far as it affects Vosmer, should not be further delayed by these subsequent proceedings. The judgment of affirmance of this consolidated action must not be taken to be, and is not, an affirmance of the original judgment in Vosmer's favor and is without prejudice to him in prosecuting his writ of error, if such it be.

It follows that the judgment of the district court, except as to the plaintiff Vosmer, should be, and it is hereby affirmed.

MR. CHIEF JUSTICE DENISON and MR. JUSTICE WALKER not participating.