**HEATING AND PLUMBING
ENGINEERS, INC.,
Plaintiff,**

**v.**

**H.J. WILSON CO., INC., a Louisiana
corporation, Defendant-Appellee, and
Cross-Appellant,**

**v.**

**H.W. HOUSTON CONSTRUCTION
COMPANY, Defendant-Appellant,
and Cross-Appellee.**

**No. 82CA1209.**

Colorado Court of Appeals,
Div. II.

Sept. 6, 1984.

Rehearing Denied Nov. 8, 1984.

Certiorari Granted April 15, 1985.

Davis, Graham & Stubbs, Dale Harris, Denver, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Barkley, Jr., New Orleans, La., Peter J. Pizzi, Newark, N.J., for defendant-appellee and cross-appellant.

Cole, Hecox, Tolley, Keene & Beltz, P.C., John W. Sabo, III, Colorado Springs, for defendant-appellant and cross-appellee.

VAN CISE, Judge.

Plaintiff, Heating and Plumbing Engineers, Inc. (the subcontractor) brought this action to collect the amount due, and to foreclose a mechanic's lien, for duct work manufactured by it for use in a building being constructed by defendant H.W. Houston Construction Company (the contractor) for defendant H.J. Wilson Co., Inc. (the owner). The contractor cross-claimed against the owner for a judgment for the value of the materials, labor, and other services and expenses furnished by it to the project and for a decree foreclosing its own mechanic's lien therefor. The owner cross-claimed against the contractor for indemnification for any amount determined to be due to the subcontractor and for recovery of its attorneys' fees and costs.

Following a trial without a jury, the court decreed foreclosure of the subcontractor's lien against the owner's property in the amount claimed and entered a money judgment against the contractor in favor of the subcontractor. These rulings have not been appealed.

Relative to the contractor, the court found that it was the contractor and not the owner who breached the contract, that the benefit conferred on the property was worth only $180, and that the contractor's mechanic's lien claim was, and was known to be, excessive at the time it was filed. Based on those findings, the trial court denied the contractor's cross-claims except for the allowance of $180 on a quantum meruit basis, and entered a judgment against it for $65,754 in attorney's fees and $354.60 in costs incurred by the owner. The contractor appeals the denial of its cross-claims and the judgment against it for the owner's costs and attorneys' fees. We affirm.

The court denied the owner's cross-claims for indemnity from the contractor and allowed only a portion of its attorneys' out-of-pocket expenses. The owner appeals those orders, and we affirm the denial of indemnity and remand as to the attorneys' expenses.

The owner proposed to build a show room at a Colorado Springs shopping mall. The contractor, who had done work for the owner on two previous projects, was the low bidder at approximately $1.7 million. On the earlier jobs, there had been disputes concerning change orders, and this past experience was a sore point between them. Following a meeting on March 12, 1981, at which the trial court found that the contractor agreed to perform change order work without any mark-up for overhead and profit, the owner gave the contractor notice to proceed immediately with the job. It was understood that formal contract documents embodying the terms agreed to would be prepared and executed shortly thereafter.

The contractor then moved equipment into the area and did some preliminary work. It also instructed the subcontractor to commence work. By March 27, the subcontractor had done the amount of work reflected in its later-filed lien statement.

On March 27, the contractor refused to sign formal contract documents incorporating the provision concerning no mark-up on change order work. Based on that refusal, the owner ordered the contractor to cease all work on the project. The owner then retained a different contractor who agreed to and did complete the project for less money.

On April 6, the contractor notified the owner of its intention to file a lien for the full amount of its contract, $1.7 million. On June 5, the lien statement was filed for that amount. On October 1, an amended lien was filed for $44,000. In the meantime, the subcontractor filed its lien statement and commenced this action.

## I.

The contractor's first contention is that its breach of contract, if any, was not a material one and, therefore, the owner was

not justified in terminating the contract. We disagree.

■ The court found, and the evidence supports the finding, that the parties had agreed that there would be no mark-up on change orders. Therefore, when the contractor elected not to proceed under that arrangement, it breached the contract. This was a "present, positive, unequivocal refusal to perform the contract," *Gold Mining & Water Co. v. Swinerton*, 23 Cal.2d 19, 142 P.2d 22 (1943), and, in view of the past history, was a material breach. Hence, the owner was justified in terminating the contract.

## II.

The contractor admits that its lien claims were for more than the amount actually due. However, it contends that, under § 38–22–101(2), C.R.S. (1982 Repl.Vol. 16A), it was entitled to file a lien for the entire contract price and, therefore, it was error for the court to order a forfeiture of its lien rights. We agree with the owner that the contractor misinterprets the statute.

That statute provides:

"In case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate as a *lien in favor of all persons performing labor or services or furnishing materials* under contract, express or implied, with said contractor, to the extent of the whole contract price; *and after all such liens are satisfied, then as a lien for any balance of such contract price in favor of the contractor."* (emphasis supplied)

This subsection on its face does not give a lien right to the contractor for the full contract price; at the most, all that the contractor is entitled to is the balance of the contract price remaining after all other liens have been satisfied.

■ Moreover, the quoted subsection must be viewed in conjunction with other subsections of § 38–22–101. Section 38–22–101(1) limits the lien of any person to the value of the materials, labor, or services provided. *Thirteenth Street Corp. v. A–1 Plumbing & Heating Co.*, 640 P.2d 1130 (Colo.1982). And, if the construction contract is not timely recorded, then under § 38–22–101(3) the owner is liable for the full value of labor or materials provided.

■ Construing the provisions of § 38–22–101 in their entirety, we conclude that subsection (2) does not enlarge the lien rights of the contractor beyond the reasonable value of the materials, labor, and services furnished by it. Rather, if, contrary to what happened here, the contract had been timely recorded, then the contract price would have represented the maximum value of all liens that could have been asserted.

■ The trial court found that the contractor's lien claims "were for amounts greater than were due at the time without a reasonable possibility that those amounts claimed were due, and with knowledge that those amounts claimed were greater than the amount due." Those findings are supported by the evidence and are, therefore, binding on us. *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970). Based on those findings, the court correctly ruled that the contractor forfeited its lien rights and also is liable to the owner "in an amount equal to the costs and all attorney's fees." *See* § 38–22–128, C.R.S. (1982 Repl.Vol. 16A).

## III.

Section 38–22–128, C.R.S. (1982 Repl.Vol. 16A), provides:

"Any person who files a lien under this article for an amount greater than is due without a reasonable possibility that said amount claimed is due and with the knowledge that said amount claimed is greater than that amount then due, ... shall forfeit all rights to such lien plus such person shall be liable to the person against whom the lien was filed in an amount equal to the *costs and all attorney's fees."* (emphasis supplied)

The contractor asserts that, even if its lien statement was for an excessive amount, the award should have been limited to those attorney's fees allocable to defending against the contractor's cross-claim for money damages and lien foreclosure. Under the circumstances of this case, we disagree.

There were three lawsuits involving this project and the resultant dispute between these parties. In one, the owner sued the contractor in federal court in Louisiana for declaratory relief regarding the proposed filing of a mechanic's lien statement and for damages if a lien should be filed. The contractor then sued the owner for damages for breach of contract, and this action ended up in federal court in Colorado. Then the present action was filed by the subcontractor against both parties, with resultant cross-claims. Action in the two federal court cases was stayed pending the outcome of the instant case, and the parties stipulated that all of the parties' claims should be considered to be before this trial court.

The $65,754 awarded was for all attorney's fees incurred by the owner as a result of all three of these cases. The trial court based this award on its findings: (1) that in the instant case the "main focus" was the issues between the contractor and the owner and that the subcontractor's claim was merely "incidental in the amount of time the parties devoted to it"; (2) that the Louisiana lawsuit was filed as a direct result of the contractor's notice of intent to claim a lien in an excessive amount; (3) that similar issues were present in all of the cases; and (4) that the extent of the litigation was directly traceable to the contractor's wrongful act.

■ The obvious intent of § 38–22–128, C.R.S., is to penalize lien claimants who abuse the mechanic's lien law. Where, as here, all of the lawsuits were directly attributable to the contractor's giving of notice, or the filing, of such a claim, the trial court did not err in awarding all of the attorney's fees incurred incident to its excessive claim. *See Duran v. Lamm,* 644 P.2d 66 (Colo.App.1981).

### IV.

Inasmuch as the trial court found the attorney's fees to be reasonable, the contractor's contention that there is an implicit reasonableness standard in the statutory language is moot.

### V.

Neither party disputes the correctness of the trial court's limiting the word "costs" in § 38–22–128, C.R.S. (1982 Repl.Vol. 16A) to "those costs which are attributable directly to fees and expenses required by the court," such as filing fees, bond fees, witness fees, etc. *See* § 13–16–122, C.R.S. (1983 Cum.Supp.). Nor was there any challenge to the court's refusal to award, as costs, the out-of-pocket expenses involved in taking depositions of persons who were available at trial. *Morris v. Redak,* 124 Colo. 27, 234 P.2d 908 (1951); *McNeill v. Allen,* 35 Colo.App. 317, 534 P.2d 813 (1975).

However, the court disallowed the non-cost out-of-pocket expenses of the attorneys which were separately billed to the client, amounting to over $7,000, holding that they were "office overhead" and were "included in how the attorneys set their hourly rates for their attorney's fees." These expenses included, in addition to expenses incident to depositions which are not reimbursable, expenditures for travel, car rentals, long distance telephone calls, telecopy and photocopy charges, computer research fees, special postage, courier expenses, and other miscellaneous items. In its appeal, the owner contends that the court was unduly restrictive in its interpretation of the words "attorney's fees" and that these items should be included as part of the fees authorized by the statute because they are reasonable expenses incident to the attorneys' work. We agree in part.

■ We regard, as dispositive of this issue, *Northcross v. Board of Education,*

611 F.2d 624 (6th Cir.1979), cited with approval in *Duran v. Lamm, supra.* *Northcross* and *Duran* involved claims for attorney's fees in civil rights cases under 42 U.S.C. § 1988, which directs the court to grant the prevailing party "a reasonable attorney's fee." In *Northcross* the court held that the "fee" of an attorney includes, in addition to the attorney's normal hourly charges, "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." These included, among others, reasonable photocopying, travel, and telephone expenses.

## VI.

The owner also contends that the trial court erred in refusing to enter judgment against the contractor for the amount of the award to the subcontractor on its mechanic's lien, on either an indemnification theory or as damages caused by the contractor's repudiation. We disagree.

■ This is not a proper case for indemnification. The subcontractor had a valid claim on open account against the contractor and for a mechanic's lien foreclosure against the owner's property. One is not primary, entitling the other to indemnity. *See William F. Larrick, Inc. v. Burt Chevrolet, Inc.,* 147 Colo. 133, 362 P.2d 1030 (1961); *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 33 Colo. App. 99, 517 P.2d 406 (1973). As stated by the trial court, "Here, the subcontractor did work at the request of the general contractor which was in turn at the request of the owner, thus putting into operation a sequence of events which led to this liability."

■ Also, the owner is not entitled to recover the amount of the subcontractor's lien award as damages from the contractor. As found by the trial court, the repudiation led to another contract being awarded to a different contractor at a lower price. Consequently, the owner incurred no loss or damage, even with the subcontractor's lien,

as a result of the original contractor's breach.

The judgment is affirmed. The cause is remanded to the trial court for it to determine from the existing record which of the non-cost out-of-pocket expenses, exclusive of expenses of depositions of witnesses available at trial, are reasonable and are properly includible in the attorney's fees in addition to the amount of fees already awarded, and to increase the award accordingly.

SMITH and BERMAN, JJ., concur.