Opinion by JUDGE TERRY
¶ 1 After a real estate development project failed, plaintiff, David Daniel Byerly (Contractor), the development's project manager, filed a mechanic's lien for $824,000, and later amended the lien to $641,000. The trial court, relying on section 38-22-101(3), C.R.S.2012, ruled that Contractor had a valid lien for $417,095, an amount commensurate with what it found to be the value of his services, and found that the lien was not excessive and therefore not invalid under section 38-22-128, C.R.S.2012.
¶ 2 Defendants, Bank of Colorado and Delta Properties II, LLC (collectively, the Bank), appeal the trial court's judgment, entered following a bench trial, in favor of Contractor. We reverse and remand with directions.
I. Background
A. The Contract
¶ 3 In 2006, Wildwing Development, LLC (Developer) hired Contractor to help it develop a residential subdivision in the town of Timnath, Colorado. Contractor's duties included planning, developing, managing, constructing, and marketing the subdivision, which Developer intended to complete in four phases. Contractor and Developer signed a contract that included the following compensation terms:
? Developer agrees to pay Contractor $7,000 a month for his services.
? Developer also agrees to compensate Contractor with "2.5 residential lots or the cash value of 2.5 lots for each Phase of the Project ('Lot Compensation')."
? If Contractor elects to receive the "Earned Cash Value" in lieu of receiving lots, his Lot Compensation "shall be determined and paid in cash" based on a specified formula.
? If Contractor elects to receive residential lots, he may do so "in lieu of the Earned Cash Value for that Phase ('Earned Lots') by giving written notice of such selection to [Developer]. The then current market price of the Earned Lot or Lots selected by [Contractor] shall be deducted from the Earned Cash Value to which [Contractor] is entitled, thus lowering his Earned Cash Value. If the market price of the Earned Lot or Lots selected by [Contractor] exceeds the Earned Cash Value to which [Contractor] is entitled at the time [Contractor] selects the Earned [L]ot or [L]ots, then Contractor shall reimburse [Developer] for the difference at the time of conveyance of the Earned Lot or Lots to [Contractor]."
*734 ? Developer is not "obligated to pay Earned Cash Value for a Phase until both of the following requirements have been met with respect to that Phase: [1] ... The development/ construction loan for that Phase (the 'Construction Loan') has been paid in full; and [2] ... [Developer] has earned a net profit ... on the sale of lots within that Phase equal to or greater than the Earned Cash Value to be paid to [Contractor]."
? Developer will release Earned Lots to Contractor "without regard to the foregoing restrictions on cash payments so long as the Earned Lot(s) selected by [Contractor] either have been or can be released from the Construction Loan without further payment by [Developer]."
? Contractor has "earned" Lot Compensation "when the Town of Timnath accepts and signs off on all subdivision infrastructure improvements within that Phase ('Earned Lot Compensation')."
¶ 4 The contract between Developer and Contractor was never recorded with the county clerk and recorder.
B. The Mechanic's Lien
¶ 5 By late 2009, Developer had sold only half of the thirty-two villa home lots (valued at $110,000 each) and only four of the seventy-six single family home lots (valued between $294,500 and $350,000) in the first development phase. It had not paid Contractor's monthly fee for several months. The Bank, which had issued construction loans to Developer, declared Developer to be in default. Meanwhile, though Developer was in no position to compensate Contractor, it sent him a letter stating that, as of January 5, 2010, Contractor had "earned" Lot Compensation for the first phase. The Bank later foreclosed on its loans to Developer and acquired the unsold land parcels. Neither Developer nor the Bank ever tendered Lot Compensation-whether in-kind or cash-to Contractor.
¶ 6 In March 2010, shortly before the Bank's foreclosure, Contractor recorded a mechanic's lien on one of the parcels of land for $824,000 (later amended to $641,000), and then filed a complaint in foreclosure, naming the Bank as an interested party. The amended lien included $84,000 of unpaid monthly fees, and $557,000 in Lot Compensation, which Contractor calculated "based upon when [homes located in the surrounding area] were sold and how [Contractor] felt a judge may perceive what the fair market value for them would be."
¶ 7 Contractor admitted at trial that the two conditions precedent to Developer's duty to pay the Earned Cash Value portion of the Lot Compensation had not been met-that is, Developer had not paid off its construction loans and had not earned a net profit. Contractor further acknowledged that the condition precedent to Developer's release of Earned Lots (namely, the release of any of the lots from their construction loans) had not been met.
¶ 8 In addition to the mechanic's lien claim now under consideration, Contractor asserted a breach of contract claim against Developer and was awarded a default judgment based on eighteen months of unpaid monthly fees ($126,000 at a rate of $7,000 a month), plus interest and costs. Notably, Contractor was not awarded any Lot Compensation against Developer.
C. The Trial Court's Findings and Judgment
¶ 9 Following a bench trial, the trial court made the following findings of fact and conclusions of law regarding the value of Contractor's lien:
? Contractor's work was adequate and lienable.
? The conditions precedent to Contractor receiving Lot Compensation never occurred, and, based on Developer's poor financial situation, could never occur.
? Developer did not record its contract with Contractor with the county clerk and recorder.
? Ordinarily, under sections 38-22-101(2) - (3), C.R.S.2012, the contract price is the ceiling for a mechanic's *735 lien filed against a landowner. However, if no contract is recorded, then the landowner is liable for the "full value" of the services and labor provided.
? In this case, because no contract was recorded, Contractor was entitled to the "full and accurate value of his services" for the entire period of time that Developer's project was "viable and had a chance to move forward."
? The "full and accurate value" of Contractor's services was $12,000 a month for every month he worked through November 2009; $7,000 a month from December 2009 to February 2011; plus interest. After subtracting what Contractor had already been paid ($7,000 a month from March 2006 through July 2009), the total principal amount owed to Contractor was $346,000. To that, the court added 12% interest from March 2, 2010 to November 17, 2011, for a total of $417,095.
¶ 10 The trial court made the following further findings of fact and conclusions of law regarding whether Contractor had knowingly filed an excessive lien under section 38-22-128 :
? Contractor could have reasonably anticipated receiving Lot Compensation because the letter from Developer informed him that he had "earned" such compensation.
? Contractor's reasonable anticipation was not defeated by Developer's inability to meet the conditions precedent to paying Lot Compensation because that inability could not have been ascertained at the time Contractor filed his lien.
? The fact that Contractor was ultimately found to be owed less than the amount he claimed in the lien is not dispositive of his knowledge or reasonable anticipation.
¶ 11 Accordingly, the trial court found in favor of Contractor on his mechanic's lien claim. Because of the Bank's foreclosure on the property, the court had earlier approved the Bank's filing of a surety bond "in place of" Contractor's mechanic's lien. In ruling on posttrial motions, the court ruled that Contractor's lien was prior to the Bank's lien. The court certified its judgment in favor of Contractor and against the Bank as a final, appealable order under C.R.C.P. 54(b).
II. Discussion
A. Filing of a Lien in Excess of the Contract Price
¶ 12 The Bank argues that the trial court misconstrued section 38-22-101(3) and erred in determining that Contractor's lien was measured by the "value" of his services, rather than by the contract terms. According to the Bank, Contractor could not lawfully file a lien that exceeded the contract price. We agree.
1. Standard of Review
¶ 13 Statutory construction is a question of law that we review de novo. People v. Perez, 238 P.3d 665, 669 (Colo.2010). "In interpreting a statute, we strive to give effect to the legislative intent. To do so, we look first to the language of the statute and give words their plain and ordinary meaning." People in Interest of O.C., 2012 COA 161, ¶ 19, 312 P.3d 226 (cert. granted Nov. 19, 2012, 2012 WL 5835689 ) (citation omitted) (citing C.S. v. People, 83 P.3d 627, 634, 635 (Colo.2004) ).
¶ 14 If the statutory language is clear and unambiguous, we do not look beyond the plain language and must apply the statute as written. Yale v. AC Excavating, Inc., 2013 CO 10, ¶ 13, 295 P.3d 470 (citing Smith v. Exec. Custom Homes, Inc., 230 P.3d 1186, 1189 (Colo.2010) ); Vigil v. Franklin, 103 P.3d 322, 328 (Colo.2004). In doing so, we read and consider the statute as a whole, interpreting it in a manner that gives "consistent, harmonious, and sensible effect to all its parts." Lujan v. Life Care Centers, 222 P.3d 970, 973 (Colo.App.2009).
¶ 15 We also construe contract terms de novo. Fed. Deposit Ins. Corp. v. Fisher, 2013 CO 5, ¶ 9, 292 P.3d 934 (citing Ad Two, Inc. v. City & Cnty. of Denver, 9 P.3d 373, 376 (Colo.2000) ).
*736 2. Analysis
¶ 16 The trial court erred by disregarding the terms of the contract between Developer and Contractor and determining the Contractor's lien to be equal to what it found to be the "value" of his services.
¶ 17 The trial court ruled, and Contractor argues on appeal, that section 38-22-101(3) allows a contractor who contracts directly with the landowner to file a mechanic's lien for the "value" of his or her services when the contract is not recorded with the county clerk and recorder. This interpretation is contrary to the plain meaning of that section, as well as Colorado case law.
¶ 18 Colorado's General Mechanics' Lien statute, sections 38-22-101 to - 133, C.R.S.2012, allows "[e]very person" who supplies capital, labor, or services in order to improve a parcel of real property to file a lien on that parcel for the value of his or her capital, labor, or services. § 38-22-101(1), C.R.S.2012. Subsection (2) states:
In case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons performing labor or services or furnishing laborers or materials under contract, express or implied, with said contractor, to the extent of the whole contract price; and after all such liens are satisfied, then as a lien for any balance of such contract price in favor of the contractor.
§ 38-22-101(2) (emphasis added).
¶ 19 Subsection (3) states:
All such contracts shall be in writing when the amount to be paid thereunder exceeds five hundred dollars, and shall be subscribed by the parties thereto. The contract, or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a statement of the general character of the work to be done, the estimated total amount to be paid thereunder, together with the times or stages of the work for making payments, shall be filed by the owner or reputed owner, in the office of the county clerk and recorder of the county where the property, or the principal portion thereof, is situated before the work is commenced under and in accordance with the terms of the contract. In case such contract, or a memorandum thereof, is not so filed, the labor done and materials furnished by all persons shall be deemed to have been done and furnished at the personal instance of the owner, and such persons shall have a lien for the value thereof.
§ 38-22-103(3) (emphasis added).
¶ 20 We read subsection (3) in the context of section 38-22-101 as a whole. See Lujan, 222 P.3d at 973. Immediately preceding subsection (3) is subsection (2), which governs the relationship between an owner and a direct contractor. § 38-22-101(2).
¶ 21 Subsection (2) indicates that, where a contract exists between the owner and the direct contractor, the amount of the lien "extends to" the contract price, meaning that the lien is capped at the full contract price. Id. Subsection (2) goes on to state that the contract "operate[s] as a lien in favor of all persons performing labor or services or furnishing laborers or materials under contract, express or implied, with said contractor." Id. Thus, the lien operates to protect the direct contractor and also acts as a lien in favor of subcontractors and material providers. Once the subcontractors' and material providers' liens have been satisfied, the direct contractor has a lien for the balance of the earned amount of the contract price. See id. ; see also Heating & Plumbing Engineers, Inc. v. H.J. Wilson Co., 698 P.2d 1364, 1367 (Colo.App.) ("[Subsection (2) ] on its face does not give a lien right to the contractor for the full contract price; at the most, all that the contractor is entitled to is the balance of the contract price remaining after all other liens have been satisfied."), corrected, 708 P.2d 808 (Colo.App.1984).
¶ 22 Under subsection (3), the contract must be in writing if it is in excess of $500. § 38-22-101(3). Contracts in excess of $500 "shall be filed" by the owner with the county clerk and recorder. Id. The recording requirement in subsection (3) for contracts in excess of $500 "protect[s] the owner against liens over and above his contract price and ... give[s] general information to all persons *737 who may desire to furnish materials or perform labor on the structure." Armour & Co. v. McPhee & McGinnity Co., 85 Colo. 262, 270-71, 275 P. 12, 15 (1929).
¶ 23 If such a contract is not recorded, the labor done and materials furnished by "all persons " shall be "deemed " to have been done "at the personal instance of the owner," and such persons shall have a lien "for the value thereof." § 38-22-101(3) (emphasis added). Contrary to Contractor's contention that he falls within the "all persons" language in subsection (3), that phrase refers only to subcontractors and material providers, and not to the direct contractor. The language employed in the statute makes this clear.
¶ 24 The "all persons" language in subsection (3) is a reference back to the "all persons" language in subsection (2), which refers to "all persons performing labor or services or furnishing laborers or materials under contract ... with said contractor ." See § 38-22-101(2) - (3) (emphasis added). "Said contractor" refers to the party who entered into the direct contract with the owner. Therefore, "all persons" means "subcontractors" and "material providers" in both subsections (2) and (3). See Armour & Co., 85 Colo. at 270-71, 275 P. at 15 ("[P]lans and specifications forming a part of the contract must be filed, and ... a failure by the owner to file them as a part of the contract makes the owner liable to materialmen, laborers, and subcontractors, the same as if their contract [had been directly] with the owner."); Daniel v. M.J. Dev., Inc., 43 Colo.App. 92, 95, 603 P.2d 947, 949 (1979) (" Section 38-22-101(3)... grants the status of principal contractor to a subcontractor where the contract for improvements exceeds $500 and where the contract or a memorandum thereof is not recorded.").
¶ 25 Subcontractors are the only ones who would have occasion to do work that must be "deemed" to have been done for the owner, given that the direct contractor already has a contract showing that the work is to be done "at the personal instance of the owner." § 38-22-101(3) ; see Black's Law Dictionary 477-78 (9th ed.2009) (defining "to deem" as "[t]o treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have"; " '[d]eem' has been traditionally considered to be a useful word when it is necessary to establish a legal fiction either positively by 'deeming' something to be what it is not or negatively by 'deeming' something not to be what it is"). The statute treats subcontractors as if they were direct contractors because they have not been provided record notice of the terms between the owner and the actual direct contractor. See Armour & Co., 85 Colo. at 270-71, 275 P. at 15. It is for that reason that the contract price does not control the value of subcontractors' liens.
¶ 26 Because subsection (3) contains no provision addressing how the lien of the direct contractor is to be treated when the owner fails to record the contract, we must look to the terms of the contract. Therefore, it was error for the trial court to apply subsection (3) to Contractor here, and to determine the value of his lien based on the "value of his services" (as referenced in subsection (3)) rather than based on the contract price.
¶ 27 The trial court's reliance on Heating & Plumbing Engineers, Inc., to hold that Contractor was entitled to a lien for the value of his services, rather than for the contract price, is misplaced. There, a contractor that had contracted directly with the owner did not fully perform under its contract. 698 P.2d at 1366. Nevertheless, the contractor filed a lien for the entire contract price, though it later amended the lien to a substantially lower amount. Id. A division of this court ruled that section 38-22-101(2) did not automatically allow the contractor to file a lien for the full contract price, and that the contractor was only entitled to file a lien for "the reasonable value of the materials, labor, and services furnished by it." Id. at 1367. The division construed subsection (3) in the same way, stating, "the owner is liable for the full value of labor or materials provided" when the contract is not timely recorded. Id.
¶ 28 The trial court here read that case to mean that an unrecorded contract never controls, and that a party that contracts directly with the owner can recover the value of the *738 labor and materials provided, in excess of the contract price. This interpretation improperly applies to direct contractors the statutory provisions intended to protect subcontractors and material providers in the absence of recorded notice of the main contract. Moreover, the holding of Heating & Plumbing Engineers, Inc., is inapplicable here. There, the direct contractor could not recover the full contract price because the value of its work was less than the contract price-not more, as the trial court found here.
¶ 29 The trial court's reading of the statute would lead to unintended and absurd results. Under its reading, whenever property owners fail to record contracts for improvement of real property, direct contractors could evade being held accountable under section 38-22-128 for filing excessive liens because they could always attempt to "value" their services at an amount greater than the contract price and file a lien for that amount. We may not construe the mechanic's lien statutes in a way that would lead to such an absurd result. See Larson v. Sinclair Transp. Co., 2012 CO 36, ¶ 29, 284 P.3d 42 (statutes should not be construed in a manner that would yield absurd results).
¶ 30 We conclude that, where, as here, a direct contractor performs services, the value of which is alleged to have exceeded the contract price, the contract price is the maximum amount for which a lien can be filed. See § 38-22-101(2) ("[i]n case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price"). Accordingly, we conclude that the trial court erred in interpreting subsection (3) to allow Contractor to file a lien in excess of the contract price.
B. Filing of an Excessive Lien
¶ 31 The Bank next contends that the trial court erred in determining that Contractor did not violate section 38-22-128 by filing an excessive lien. We agree.
1. Standard of Review
¶ 32 Whether a lien is excessive is an issue of fact. LSV, Inc. v. Pinnacle Creek, LLC, 996 P.2d 188, 191 (Colo.App.1999) ; Tighe v. Kenyon, 681 P.2d 547, 552 (Colo.App.1984). A trial court's findings of fact will not be disturbed on appeal unless they are clearly erroneous. Saturn Sys., Inc. v. Militare, 252 P.3d 516, 521 (Colo.App.2011). A finding is clearly erroneous if there is no evidence in the record to support it. Id.
¶ 33 When determining whether a lien is excessive, we view the matter "in light of the information available to the lien claimant at the time of filing the lien statement." E.B. Roberts Constr. Co. v. Concrete Contractors, Inc., 704 P.2d 859, 864 (Colo.1985).
2. Analysis
¶ 34 Section 38-22-128, C.R.S.2012, provides:
Any person who files a lien under this article for an amount greater than is due without a reasonable possibility that said amount claimed is due and with the knowledge that said amount claimed is greater than that amount then due, and that fact is shown in any proceeding under this article, shall forfeit all rights to such lien plus such person shall be liable to the person against whom the lien was filed in an amount equal to the costs and all attorney's fees.
(Emphasis added.)
¶ 35 After receiving exhibits and testimony, the trial court found that (1) Contractor could have reasonably anticipated receiving Lot Compensation after Developer informed him that he had "earned" it; and (2) from Contractor's perspective, it was not obvious that the conditions precedent for Lot Compensation could not occur and would never occur. We reject the trial court's factual findings because there is no evidence in the record to support them, and, indeed, they are contrary to the evidence in the record.
¶ 36 The contract premised Contractor's Lot Compensation (during any given phase of construction) on a number of conditions precedent. For Contractor to receive cash value, Developer had to repay its construction loans and realize a net profit. For Contractor to receive a lot, Developer had to be *739 released from the construction loan for that particular lot.
¶ 37 Contractor never varied from his testimony that these events had not occurred at the time he filed his lien. The record shows that Contractor had personally negotiated the terms of his contract with Developer, and was well aware of the conditions precedent to his ability to receive Lot Compensation.
¶ 38 Contractor gave the following testimony at trial regarding the contractual conditions for his receipt of Lot Compensation:
Q: This is the condition [in the contract] on the restriction of the actual payment of cash value to you, and it lists two conditions. One, the construction loan for the phase has been paid in full. That had not occurred [when you filed the lien] on March 15, 2010. We know that, correct?
A: Yes, sir.
Q: Two, [the] net profit [condition]. The owner has earned a net profit on the sale of lots within that phase equal to or greater than the earned cash value to be paid to [Contractor]. We know that hasn't happened either as of March 15, 2010, correct, sir?
A: Yes, sir.
Q: Now, as to your entitlement for two-and-a-half lots, the in-kind payment.... [The contract states that Contractor] shall be entitled to reserve, select, and receive earned lots in each phase so long as the earned lots selected by [Contractor] either have been or can be released from the construction loan without further payment by the owner. And we know that didn't occur as of March 15, as well, correct, sir?
A: Yes, sir.
....
Q: You knew that the conditions that we have just looked at had not occurred when you filed your original mechanic's lien March 15, 2010, true?
A: True.
Q: But you filed that lien anyway? A: Yes.
Q: And, in fact, you knew when you filed your original mechanic's lien on March 15, 2010, that [Developer] was in no position to release to you any of the lots in Phase 1?
A: That's correct.
Q: And, in fact, you thought when you filed your original mechanic's lien on March 15, 2010, [Developer] wasn't going to be able to release its lots to you, and that's why you filed the lien?
A: Well, I knew [Developer] couldn't release any lots at that moment in time, but I felt [it] might at some stage in the future.
¶ 39 Contractor further testified that, at the time he filed the lien, he was aware that Developer was preparing to file for bankruptcy. He was also aware that the residential subdivision was scheduled for a foreclosure sale on March 24, 2010.
¶ 40 In light of the information available to Contractor at the time he filed the lien, see E.B. Roberts Constr. Co., 704 P.2d at 864, there are only two conclusions that can be drawn: (1) there was no reasonable possibility that Lot Compensation was "then due" to Contractor, see § 38-22-128 ; and (2) Contractor knowingly filed his lien for an amount greater than the amount "then due" to him, see id .
¶ 41 "Due" is defined as "[i]mmediately enforceable" or "[o]wing or payable; constituting a debt." Black's Law Dictionary 574. Contractor was not "due" payment under either definition. First, he admitted that the conditions precedent to being paid Lot Compensation had not yet occurred; therefore, he could not "immediately enforce[ ]" payment for such compensation. And second, because the conditions precedent were necessary, under the terms of the contract, for Developer to become "obligated" to pay Lot Compensation to Contractor, such compensation was not "owing or payable" and did not yet "constitut[e] a debt."
¶ 42 Contractor's testimony that he thought Developer "might at some stage in the future" pay him Lot Compensation indicates his knowledge that the amount of his claimed lien was not, in fact, due at the time he filed the lien.
¶ 43 Because there is no evidence in the record to support the trial court's findings that there was a reasonable possibility that the lien amount was owed and that Contractor *740 did not knowingly file an excessive lien, the trial court's findings were clearly erroneous. The uncontradicted evidence shows that there was no reasonable possibility that the amount claimed in the lien filing was due at the time it was filed, and that Contractor knew that the amount claimed was greater than the amount then due. Therefore, Contractor filed an excessive lien under section 38-22-128, and his lien is forfeited. Wigham Excavating Co. v. Colorado Fed. Sav. & Loan Ass'n, 796 P.2d 23, 25 (Colo.App.1990).
¶ 44 Because of our resolution of these issues, we need not address the Bank's other arguments concerning the amount of Contractor's lien.
¶ 45 The judgment is reversed, and the case is remanded to the trial court for entry of judgment in favor of defendants on Contractor's claims.
JUDGE ROMÁN and JUDGE KAPELKE* , concur.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2012.