1
 2026 CO 19 Ralph L. Wadsworth Construction Company, LLC, Petitioner v. Regional Rail Partners; Balfour Beatty Infrastructure, Inc.; Graham Contracting Ltd.; Travelers Casualty and Surety Company of America; Balfour Beatty, LLC; and Graham Business Trust. Respondents No. 24SC537Supreme Court of Colorado, En BancApril 6, 2026
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 22CA2154
 
 2
 
          
 Attorneys for Petitioner: Berg Hill Greenleaf Ruscitti LLP
 Giovanni M. Ruscitti Rudy E. Verner Jack P. Storti Lawrence
 Myers Boulder, Colorado
 
 
          
 Attorneys for Respondents: Martin Hild P.A. Ll. Rhyddid
 Watkins Aurora, Colorado
 
 
          
 Connelly Law, LLC Sean Connelly Denver, Colorado
 
 3
 
          
 Attorneys for Amici Curiae Associated General Contractors of
 Colorado and Colorado Contractors Association: Polsinelli PC
 Stephen D. Gurr Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Independent Electrical
 Contractors Rocky Mountain: Hassan & Cables, LLC John L.
 Skari, Jr. Boulder, Colorado
 
 4
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and JUSTICE BLANCO
 joined.
 
 5
 
          
 OPINION
 
 
          
 GABRIEL, JUSTICE
 
 
          ¶1
 In this dispute arising from a subcontractor's filing of
 a verified statement of claim under the Colorado Public Works
 Act, §§ 38-26-101 to -110, C.R.S. (2025), we
 granted certiorari to consider whether (1) disputed or
 unliquidated amounts, including delay and disruption damages,
 may lawfully be included in a verified statement of claim;
 and (2) the penalty for filing an excessive claim under the
 Act is a claimant's forfeiture of all of its legal rights
 and remedies for the amount claimed, or only its statutory
 rights and remedies.[1]
 
 
          ¶2
 We now conclude that disputed or unliquidated amounts may
 lawfully be included in a verified statement of claim,
 provided that the amounts otherwise fall
 
 6
 
 within the statutory constraints of the Public Works Act, and
 that, on the facts presented, the trial court did not err in
 finding that Wadsworth's verified statement of claim was
 not excessive. We further conclude that a claimant who files
 an excessive claim forfeits only the statutory rights and
 remedies created by the Public Works Act and not all rights
 and remedies otherwise available at law.
 
 
          ¶3
 Accordingly, we reverse the division's judgment and
 remand this case to the division to allow it to address the
 additional issues raised in Wadsworth's cross-appeal that
 the division did not previously address.
 
 
          I.
 Facts and Procedural History
 
 
          ¶4
 In 2013, the Regional Transportation District
 ("RTD") contracted with Regional Rail Partners to
 design and build the North Metro Rail Line public works
 project between Thornton and Denver's Union Station. The
 primary contract for this project was valued at over $343
 million. Regional Rail then entered into a subcontract with
 Wadsworth for work related to portions of the rail line. The
 original subcontract price was $29 million, but, following
 change orders, Wadsworth was to be paid over $60 million.
 
 
          ¶5
 The project was impacted by a number of delays and
 disruptions that significantly expanded both the
 project's timeline and associated costs. Wadsworth hired
 an expert to undertake an analysis of the costs and damages
 that Wadsworth had incurred due to these delays and
 disruptions. The expert
 
 7
 
 subsequently delivered a report concluding that Regional Rail
 owed Wadsworth approximately $12.4 million due to the
 "ongoing delays, disruptions and changes incurred by it
 at the project."
 
 
          ¶6
 Pursuant to section 38-26-107(1), C.R.S. (2025), of the
 Public Works Act, Wadsworth filed a verified statement of
 claim with RTD. In this verified statement of claim,
 Wadsworth alleged that Regional Rail owed it nearly $15.8
 million for the labor, materials, or other supplies that
 Wadsworth had provided in connection with the project. Upon
 receipt of this verified statement of claim, Regional Rail
 took issue with a contractual retention amount that it
 asserted was not yet owed. Wadsworth then amended its
 verified statement of claim to remove this retention amount,
 and the amendment reduced the claimed amount to approximately
 $12.8 million (comprising the $12.4 million from the expert
 report and additional amounts that came due after the report
 was served).
 
 
          ¶7
 In response to Wadsworth's amended verified statement of
 claim (for convenience and consistency with the statutory
 language, we will hereafter refer to the amended verified
 statement of claim as the "verified statement of
 claim"), Regional Rail filed an ex parte petition in the
 Adams County District Court, pursuant to section 38-26-108,
 C.R.S. (2025), to substitute a corporate surety bond issued
 by Travelers Casualty and Surety Company of America as
 security in place of the verified statement of claim. In this
 petition, Regional Rail also requested
 
 8
 
 that the court release the verified statement of claim. The
 court granted Regional Rail's petition.
 
 
          ¶8
 A few months later, Wadsworth initiated this action in the
 Denver District Court. In its complaint, as subsequently
 amended, Wadsworth asserted a variety of claims against
 defendants Regional Rail Partners, Balfour Beatty
 Infrastructure, Inc., Graham Contracting Ltd., Travelers
 Casualty and Surety Company of America, Balfour Beatty, LLC,
 and Graham Business Trust (collectively,
 "Defendants") seeking unpaid costs. These claims
 included a common law claim for breach of contract, a
 statutory claim for relief under the corporate surety
 substitution bond, and a statutory claim for failure to pay
 construction funds. In support of these claims, Wadsworth
 principally alleged that Regional Rail had caused numerous
 project delays, all of which impacted Wadsworth's ability
 to complete its work and caused Wadsworth to sustain
 additional costs.
 
 
          ¶9
 Defendants answered, asserting a number of affirmative
 defenses as well as counterclaims. As pertinent here,
 Defendants alleged that Wadsworth had contributed to the
 delays underlying its asserted damages. Additionally,
 Defendants raised as both an affirmative defense and as a
 counterclaim that Wadsworth's verified statement of claim
 was excessive under section 38-26-110, C.R.S. (2025), and
 that Wadsworth had thus forfeited all rights to the amounts
 claimed in its verified statement of claim.
 
 9
 
          ¶10
 The case proceeded to a ten-day bench trial, after which the
 trial court issued extensive and detailed findings of fact
 and conclusions of law. The court ultimately determined that
 Regional Rail had not established that Wadsworth's
 verified statement of claim was excessive and that
 "there was a reasonable possibility the amount
 [Wadsworth] sought in the [verified statement of claim] was
 due." The trial court further found that Regional Rail
 had delayed and disrupted Wadsworth's work. The court
 thus awarded Wadsworth over $3.7 million in damages,
 including delay and disruption damages, and over $1.9 million
 in unpaid construction funds, which were to be paid no later
 than ten days after Regional Rail's receipt of such funds
 from RTD.
 
 
          ¶11
 Regional Rail then appealed, arguing, as pertinent here, that
 the trial court had erred in finding that Wadsworth's
 verified statement of claim was not excessive and in thus
 concluding that Wadsworth's claims were not forfeited
 under section 38-26-110. Wadsworth, in turn, cross-appealed,
 arguing, in pertinent part, that the trial court had erred in
 (1) declining to award Wadsworth prejudgment interest; (2)
 denying Wadsworth penalty interest under the Prompt Payment
 Act; and (3) finding that Regional Rail did not owe final
 payment to Wadsworth until after RTD had issued final payment
 to Regional Rail, as opposed to after RTD had issued payment
 for Wadsworth's work.
 
 10
 
          ¶12
 A division of the court of appeals subsequently reversed the
 trial court's decision regarding Wadsworth's verified
 statement of claim. Ralph L. Wadsworth Constr. Co. v.
 Reg'l Rail Partners, 2024 COA 78, ¶¶ 43,
 68, 558 P.3d 641, 650, 653. In so ruling, the division
 initially observed that it could discern no support in the
 record for the trial court's conclusion that there was a
 reasonable possibility that the sum claimed in the verified
 statement of claim was due. Id. at ¶ 35, 558
 P.3d at 649. This was particularly true given (1) the
 substantial disparity between the amount claimed and the
 amount proved at trial and (2) the lack of any discussion
 regarding the evidence purportedly establishing that the
 amount claimed was for labor, materials, sustenance, or other
 supplies and that it was due at the time Wadsworth filed its
 verified statement of claim. Id. Indeed, in the
 division's view, the record unequivocally established no
 reasonable possibility that the amount claimed was due.
 Id. at ¶ 36, 558 P.3d at 649. In support of
 this conclusion, the division observed that although
 Wadsworth's expert had testified regarding how he had
 calculated the $12.4 million of the claimed amount, Wadsworth
 had presented no evidence as to the basis for the remaining
 amount claimed. Id. The division further observed
 that the bulk of the $12.4 million that Wadsworth had
 itemized was for delays, disruptions, and other problems
 associated with the project. Id. at ¶ 37, 558
 P.3d at 649. The division believed that these items included
 amounts for lost profits, contractual markups, nonrental
 equipment costs, and
 
 11
 
 "extended overhead" that did not fall within the
 types of costs covered by section 38-26-107(1). Ralph L.
 Wadsworth Constr. Co., ¶ 37, 558 P.3d at 649. And
 the division noted that the parties were vigorously disputing
 who had caused the delays, thus undermining any assertion
 that Wadsworth's unliquidated claim for delay damages was
 "due" at the time Wadsworth filed its verified
 statement of claim. Id. at ¶ 38, 558 P.3d at
 649-50.
 
 
          ¶13
 The question thus became whether Wadsworth knew that it had
 included in its verified statement of claim amounts that did
 not fall within the statute. Id. at ¶ 40, 558
 P.3d at 650. The division concluded that the record
 unequivocally established that it did. Id. In
 support of this determination, the division observed that
 Wadsworth's president had acknowledged that the amount
 claimed included amounts "in excess of the agreed to
 change orders" and purportedly included lost profits.
 Id. at ¶ 41, 558 P.3d at 650. Thus, in the
 division's view, by Wadsworth's own admission, it
 knew that its claim included change orders that Wadsworth was
 seeking but to which Regional Rail had not agreed, as well as
 unliquidated claims for damages that Wadsworth had not yet
 proved. Id. at ¶ 42, 558 P.3d at 650.
 
 
          ¶14
 The division thus concluded that, as a matter of law, the
 evidence established that (1) Wadsworth's verified
 statement of claim was for an amount greater than the amount
 due; (2) there was no reasonable possibility that the amount
 claimed was due; and (3) Wadsworth knew this when it filed
 its verified
 
 12
 
 statement of claim. Id. at ¶ 43, 558 P.3d at
 650. Wadsworth's verified statement of claim was
 therefore excessive, and, as a result, Wadsworth had
 forfeited its entire claim. Id.
 
 
          ¶15
 Accordingly, the division reversed the trial court's
 judgment "to the extent it awarded Wadsworth any amount
 included in its amended verified statement of claim."
 Id. at ¶ 68, 558 P.3d at 653. In light of this
 conclusion, the division did not need to reach three of
 Wadsworth's issues on cross-appeal. Id. at
 ¶ 61, 558 P.3d at 653.
 
 
          ¶16
 Wadsworth then petitioned for certiorari review, and we
 granted its petition.
 
 
          II.
 Analysis
 
 
          ¶17
 We begin by setting forth the applicable standard of review
 and principles of statutory construction. We then apply these
 legal principles to determine whether disputed or
 unliquidated amounts may be included in a verified statement
 of claim. Concluding that they may be, we consider whether
 Wadsworth's verified statement of claim constituted an
 excessive claim under the Public Works Act. We end by
 addressing the proper construction of the Act's
 forfeiture provision regarding excessive claims, section
 38-26-110.
 
 13
 
          A.
 Standard of Review and Principles of Statutory
 Construction
 
 
          ¶18
 We review questions of statutory construction de novo.
 People in Int. of B.C.B., 2025 CO 28, ¶ 24, 569
 P.3d 74, 79. When interpreting statutes, we seek to determine
 and effectuate the legislature's intent. Id. In
 doing this, we apply words and phrases in accordance with
 their plain and ordinary meanings, and we consider the entire
 statutory scheme to give consistent, harmonious, and sensible
 effect to all of its parts. Id. Moreover, we avoid
 constructions that would render any statutory words or
 phrases superfluous or that would lead to illogical or absurd
 results. Id.
 
 
          ¶19
 In construing a statute, we respect the legislature's
 choice of language. Id. at ¶ 25, 569 P.3d at
 79. Accordingly, we may not add words to a statute or
 subtract words from it. Id.
 
 
          ¶20
 If the statutory language is unambiguous, then we will apply
 it as written and need not resort to other rules of statutory
 construction. Id. at ¶ 26, 569 P.3d at 79. If,
 however, a statute is ambiguous (i.e., reasonably susceptible
 of multiple interpretations), then we may consider other
 tools of statutory interpretation, including the consequences
 of a given construction, the goals to be achieved by the
 statute, and the statute's legislative history.
 People v. Hudson, 2025 CO 52, ¶ 15, 576 P.3d
 131, 134.
 
 14
 
          ¶21
 Finally, we defer to the trial court's factual findings
 unless they are clearly erroneous. French v. Centura
 Health Corp., 2022 CO 20, ¶ 24, 509 P.3d 443, 449.
 Accordingly, we will not overturn a trial court's factual
 findings unless they are unsupported by the record. Lo
 Viento Blanco, LLC v. Woodbridge Condo. Ass'n, 2021
 CO 56, ¶ 17, 489 P.3d 735, 740-41.
 
 
          B.
 Disputed or Unliquidated Amounts
 
 
          ¶22
 We begin by addressing Wadsworth's contention that the
 plain language of section 38-26-107 of the Public Works Act
 allows a verified statement of claim to contain disputed or
 unliquidated amounts, including delay and disruption damages.
 To the extent that disputed or unliquidated amounts,
 including delay and disruption damages, fall within the
 limitations set forth in sections 38-26-107 and 38-26-110, we
 agree.
 
 
          ¶23
 The Public Works Act creates a remedy designed to protect
 suppliers of labor and materials for public works projects
 because the benefits of the Colorado Mechanics' Lien Act
 do not apply to projects constructed by governmental
 agencies. W. Metal Lath, a Div. of Triton Grp., Ltd. v.
 Acoustical &Constr. Supply, Inc., 851 P.2d 875, 877
 (Colo. 1993). In particular, section 38-26-107 establishes
 the right of a contractor or subcontractor on a public works
 project to file a verified statement of claim that operates
 as a lien against retained contract funds. W. Metal
 Lath, 851 P.2d at 877.
 
 15
 
          ¶24
 Section 38-26-107(1) provides, in pertinent part:
 
 
 Any person . . . that has furnished labor, materials,
 sustenance, or other supplies used or consumed by a
 contractor or his or her subcontractor in or about the
 performance of the work contracted to be done or that
 supplies laborers, rental machinery, tools, or equipment to
 the extent used in the prosecution of the work whose claim
 therefor has not been paid by the contractor or the
 subcontractor may, at any time up to and including the time
 of final settlement for the work contracted to be done, file
 with the board, officer, person, or other contracting body by
 whom the contract was awarded a verified statement of the
 amount due and unpaid on account of the claim.
 
 
          ¶25
 Upon the filing of such a claim, the public entity must
 withhold from all payments to its contractor sufficient funds
 to ensure the payment of such claims until the claims have
 been paid or the claims, as filed, have been withdrawn.
 § 38-26-107(2).
 
 
          ¶26
 Pursuant to the above-quoted statutory language, a contractor
 or subcontractor may file a verified statement of claim for a
 broad category of unpaid costs related to the scope of
 contracted work, namely, "labor, materials, sustenance,
 or other supplies" or the provision of any
 "laborers, rental machinery, tools, or equipment."
 § 38-26-107(1). Thus, the plain language of section
 38-26-107 provides that unpaid costs that fall within these
 categories and that were "used in the prosecution of the
 work" may be included in a verified statement of claim.
 Id. ¶27 Section 38-26-110 places additional
 restrictions on a claimant's right to file such a claim.
 Under that section, a claimant will forfeit certain rights
 and remedies
 
 16
 
 if its verified statement of claim is excessive. Section
 38-26-110(1) thus provides, in pertinent part:
 
 
 Any person who files a verified statement of a claim or
 asserts a claim against a principal or surety that has
 furnished a bond under this article for an amount greater
 than the amount due without a reasonable possibility that the
 amount claimed is due and with the knowledge that the amount
 claimed is greater than the amount due, and that fact is
 demonstrated in any proceedings under this article, shall
 forfeit all rights to the amount claimed ....
 
 
          ¶28
 To prove that a verified statement of claim is excessive, a
 challenging party must therefore demonstrate that, at the
 time of filing, (1) the claim was for an amount greater than
 the amount due; (2) there is no reasonable possibility that
 the amount claimed was due; and (3) the claimant knew that
 the amount claimed was greater than the amount due.
 Id.; cf. E.B. Roberts Constr. Co. v. Concrete
 Contractors, Inc., 704 P.2d 859, 864 (Colo. 1985)
 (noting that when determining whether a lien is excessive
 under the Mechanics' Lien Act, "the matter must be
 viewed in light of the information available to the lien
 claimant at the time of filing the lien statement").
 
 
          ¶29
 In sum, when read together, sections 38-26-107 and 38-26-110
 allow contractors and subcontractors to file a verified
 statement of claim for any unpaid costs for labor, materials,
 sustenance, rental machinery, tools, equipment, or other
 supplies used in the provision of the contracted work, as
 long as there was either a reasonable possibility at the time
 of filing that the amount claimed was due or
 
 17
 
 the claimant did not know at the time of filing that the
 amount claimed was greater than the amount due. Nowhere,
 however, does the statutory language prohibit a claimant from
 including disputed or unliquidated amounts in a verified
 statement of claim. Nor do we perceive any inconsistency in
 recognizing that an amount may be disputed or not yet
 determined and still have a reasonable possibility of being
 due.
 
 
          ¶30
 In reaching this conclusion, we respectfully disagree with
 the division's contrary interpretation.
 
 
          ¶31
 The division stated that section 38-26-110 bars a person
 "from claiming an amount 'greater than the amount
 due,'" Ralph L. Wadsworth Constr. Co.,
 ¶ 27, 558 P.3d at 648 (quoting section 38-26-110(1)),
 but this oversimplifies the statutory command. That a claimed
 amount is greater than the amount due is not alone sufficient
 to establish that the claim is excessive. For example, a
 subcontractor could file a claim for an amount ultimately
 determined not to be due, but if the subcontractor did not
 know that the amount claimed was greater than what was due at
 the time it filed its verified statement of claim, then the
 claim would not be excessive under section 38-26-110. Cf.
 E.B. Roberts Constr. Co., 704 P.2d at 864 (upholding a
 trial court's finding that a lien was not excessive at
 the time it was filed, even though the court ultimately
 awarded less than the lien claimed, because the evidence was
 sufficient to allow the court to conclude that the claimants
 had
 
 18
 
 used the information available at the time of filing and
 selected a valuation method that, although abandoned at
 trial, was reasonable under the circumstances); Galiant
 Homes, LLC v. Herlik, 2025 COA 3, ¶ 34, 565 P.3d
 1109, 1118 (construing parallel language under the
 Mechanics' Lien Act and reaching the same conclusion).
 
 
          ¶32
 We likewise are unpersuaded by the division's view that
 the statutory term "due" necessarily excludes
 disputed claims. Ralph L. Wadsworth Constr. Co.,
 ¶¶ 27, 38, 558 P.3d at 648, 649-50. To reach its
 conclusion, the division relied on Byerly v. Bank of
 Colorado, 2013 COA 35, 411 P.3d 732, Ralph L.
 Wadsworth Constr. Co., ¶ 27, 558 P.3d at 648, but
 that case is distinguishable. Byerly concerned a
 mechanic's lien for amounts allegedly due under a
 contract that premised a developer's duty to pay a
 contractor on a number of conditions precedent.
 Byerly, ¶ ¶ 6-7, 36, 411 P.3d at 734, 738.
 In that case, however, the contractor knew that the
 conditions precedent had not been satisfied at the time the
 contractor filed its lien, but the contractor filed the lien
 anyway. Id. at ¶¶ 37-38, 411 P.3d at 739.
 In these circumstances, the division concluded that there was
 no reasonable possibility that the lien amount was due at the
 time the contractor filed the lien and that the contractor
 had knowingly filed a lien for an amount greater than the
 amount then due. Id. at ¶ 40, 411 P.3d at 739.
 Accordingly, the division determined that the contractor had
 filed an excessive lien. Id. at ¶ 43, 411 P.3d
 at 740.
 
 19
 
          ¶33
 A dispute concerning the amount that is owed under a
 contract, which is the question before us here, is not the
 same as a scenario in which contracted amounts are premised
 on conditions precedent and the contractor knows that the
 conditions have not been satisfied. A disputed or
 unliquidated amount seeks to clarify what, if
 anything, is due. Conditions precedent, in contrast, address
 when an amount is due. Thus, a disputed or
 unliquidated amount may still be "due" even if it
 is yet undetermined.
 
 
          ¶34
 Lastly, we note that reading section 38-26-110 to prohibit a
 verified statement of claim from including any disputed
 amounts, as the division did, would conflict with the very
 purpose of the statute. The Public Works Act was enacted by
 the Colorado General Assembly "to protect
 contractors who supply labor and materials to public works
 projects." City of Westminster v. Brannan Sand
 &Gravel Co., 940 P.2d 393, 395 (Colo. 1997)
 (emphasis added). Moreover, "[a] substantial source of
 disputes in construction projects is nonpayment of those
 persons who provide material and labor to the project."
 1C Stephen A. Hess, Colorado Practice Series: Methods of
 Practice § 56:1, Westlaw (7th ed. database updated
 June 2025). Accordingly, the Public Works Act created
 remedies for claimants like Wadsworth who have claims for
 nonpayment arising from the provision of labor and materials
 on a public works project, even if those claims are disputed.
 See W. Metal Lath, 851 P.2d at 877 (listing the
 remedies created for
 
 20
 
 contractors and subcontractors on public works projects,
 including section 38-26-107's "right to establish a
 lien against retained contract funds").
 
 
          ¶35
 On this point, we note that the division itself appears to
 have acknowledged that section 38-26-107 provides a remedy
 regarding disputed amounts. Specifically, in its opinion, the
 division observed that when a public entity receives a
 verified statement of claim, the entity "must withhold
 from any payments to the contractor the amount claimed by the
 subcontractor until any disputes between the contractor
 and subcontractor are resolved." Ralph L.
 Wadsworth Constr. Co., ¶ 18, 558 P.3d at 647
 (emphasis added).
 
 
          ¶36
 For these reasons, we conclude that, as long as the amounts
 claimed to be due constitute labor, materials, sustenance,
 rental machinery, tools, equipment, or other supplies used in
 the prosecution of the work, disputed or unliquidated amounts
 may be included in a verified statement of claim. The
 question thus becomes whether delay and disruption damages
 fall within the foregoing statutory categories. We turn next
 to that question.
 
 
          ¶37
 Beginning, as we must, with the statutory language, we note
 that the text of the pertinent statutory sections neither
 expressly nor implicitly precludes a claim for delay and
 disruption damages. §§ 38-26-107(1), 38-26-110(1).
 Accordingly, applying the plain language of these provisions,
 we conclude that delay and disruption damages may be included
 in a verified statement of claim. Such
 
 21
 
 claimed damages must, however, fall within the strictures of
 section 38-26-107 and not otherwise violate the limitations
 set forth in section 38-26-110. Thus, delay and disruption
 damages may be included as long as they constitute claims for
 labor, materials, sustenance, rental machinery, tools,
 equipment, or other supplies used or consumed by a contractor
 or subcontractor in the performance or prosecution of the
 contracted work. See also Hess, supra, at
 § 56:29 (noting that, if a contracting party has
 negligently caused delay in contract performance, then a
 contractor may recover damages for "increased impact
 costs of labor, materials, equipment . . . and other costs
 attributable to the project delay"); 6 Philip L. Bruner
 &Patrick J. O'Connor, Jr., Bruner
 &O'Connor on Construction Law § 15:106,
 Westlaw (database updated Jan. 2026) (noting that disruption
 damages are concerned with "unanticipated compensable
 increases in costs incurred to perform any given work
 activity or activities" resulting from a "loss of
 efficiency" on a project); W. Stephen Dale & Robert
 M. D'Onofrio, Construction Schedule Delays
 §§ 4:1, 4:7-4:10, 4:12, Westlaw (database updated
 Sept. 2025) (detailing common types of delay damages,
 including additional costs for labor, materials, and
 equipment, and also observing that project disruptions, as
 distinct from delays, can lead to "increased labor and
 equipment costs due to the lack of productivity").
 
 
          ¶38
 Because the statute mandates that amounts claimed must be
 related to costs used in the performance or prosecution of a
 project's work, however, purely
 
 22
 
 consequential damages related to delays or disruptions, such
 as damages for lost profits or idle time, do not fall within
 the pertinent statutory restrictions and thus may not be
 included. See § 38-26-107(1); cf. In re
 Regan, 151 P.3d 1281, 1285 (Colo. 2007) (opining, based
 on similar language in the Mechanics' Lien Act, that
 "those who have a lien are laborers and material
 suppliers who have added value to [the] property");
 Tabor v. Armstrong, 12 P. 157, 160 (Colo. 1886)
 (noting that under the Mechanics' Lien Act, a
 landowner's liability is limited to those cases in which
 a lien is claimed for "labor actually performed" on
 a building and "materials actually furnished
 therefor" and that the claimant's demand for payment
 must derive from the actual performance of the work).
 
 
          ¶39
 Here, we acknowledge that the expert report that Wadsworth
 filed in support of its verified statement of claim did not
 always expressly state that the claimed amounts constituted
 costs associated with labor, materials, or other statutorily
 identified categories. The trial court, however, reviewed
 Wadsworth's verified statement of claim and found that
 there was a reasonable possibility that the amount sought was
 due under the statute. Inherent in this finding is that the
 amounts included did not otherwise contravene the statutory
 requirements of section 38-26-107. Because we cannot say that
 the trial court's finding in this regard was unsupported
 by evidence in the record, we must defer to it.
 French, ¶ 24, 509 P.3d at 449; Lo Viento
 Blanco, ¶ 17, 489 P.3d at 740-41. Accordingly, we
 
 23
 
 will not disturb the trial court's finding that
 Wadsworth's verified statement of claim was not excessive
 due to its inclusion of delay and disruption damages.
 
 
          ¶40
 In so concluding, we are unpersuaded by Regional Rail's
 contention that Wadsworth's claim included lost profits,
 idle time, or other unrecoverable costs. After a thorough
 review of the evidence, the trial court did not make any
 findings that would support the argument that Wadsworth's
 claims consisted of unrecoverable consequential damages.
 Moreover, the damages that the trial court ultimately awarded
 Wadsworth consisted of delay damages, lost productivity
 damages, specific issue damages, and unpaid contract
 balances. For the reasons set forth above, each of these
 items can properly constitute costs for labor, materials,
 sustenance, rental machinery, tools, equipment, or other
 supplies used in the performance or prosecution of the
 project, and none necessarily comprise unrecoverable
 consequential damages.
 
 
          ¶41
 Accordingly, we conclude that under the Public Works Act,
 disputed or unliquidated amounts, including delay and
 disruption damages, may be included in a verified statement
 of claim, provided that they constitute labor, materials,
 sustenance, rental machinery, tools, equipment, or other
 supplies used in the performance or prosecution of the
 project and are not otherwise excessive under section
 38-26-110. We thus further conclude that the division erred
 in finding that Wadsworth's verified statement of claim
 was excessive as a matter of law.
 
 24
 
          C.
 Penalty for Excessive Claims
 
 
          ¶42
 We next address Wadsworth's contention that the division
 erred in concluding that a claimant who violates section
 38-26-110 by filing an excessive verified statement of claim
 forfeits any and all rights and legal remedies to the amounts
 claimed. Again, we agree.
 
 
          ¶43
 As discussed above, section 38-26-110(1) provides that if a
 claimant violates the statute and files an excessive claim,
 then the claimant "shall forfeit all rights to the
 amount claimed and shall be liable . . . in an amount equal
 to all costs and all attorney fees reasonably incurred."
 Defendants contend that the plain language of this statute
 requires a claimant's forfeiture of any and all rights
 and remedies to the amount claimed, including both
 statutorily created rights and other legal avenues of relief.
 Wadsworth, in contrast, asserts that the forfeiture of
 "all rights to the amount claimed," when read
 within the context of the entire statutory scheme, means that
 a claimant who is found to have filed an excessive claim
 forfeits only the statutory rights and remedies afforded by
 the Public Works Act.
 
 
          ¶44
 As an initial matter, we conclude that the statute is
 reasonably susceptible of the interpretations proffered by
 both Defendants and Wadsworth. As Defendants assert,
 "all rights to the amount claimed" could reasonably
 be construed to refer to any and all rights afforded under
 the law to the amounts claimed to be due in the verified
 statement of claim. As Wadsworth contends,
 
 25
 
 however, "all rights" could also reasonably be
 construed to mean any and all rights afforded by the Public
 Works Act. Accordingly, we conclude that the statutory
 language is ambiguous, see Hudson, ¶ 15, 576
 P.3d at 134, and we therefore turn to other tools of
 statutory construction to discern the legislature's
 intent.
 
 
          ¶45
 We begin with legislative history. As noted above, the Public
 Works Act was enacted to provide similar remedies for those
 who supply labor and materials to public works projects as
 the remedies provided by the Mechanics' Lien Act for
 those who supply labor and materials to private works
 projects. See South-Way Constr. Co. v. Adams
 City Serv., 458 P.2d 250, 251 (Colo. 1969) (noting that
 because the benefits of the Colorado Mechanics' Lien Act
 do not apply to projects constructed by governmental
 agencies, "a remedy similar to our mechanic's [sic]
 lien statute was provided by the legislature for the
 protection of those furnishing supplies or material for such
 projects," and that the Public Works Act "stands in
 lieu of the mechanic's [sic] lien statute").
 Accordingly, we deem it appropriate to look to case law
 construing the corresponding language of the Mechanics'
 Lien Act for guidance as to the legislature's intent
 here.
 
 
          ¶46
 Section 38-22-128, C.R.S. (2025), of the Mechanics' Lien
 Act provides that a person who files an excessive lien
 "shall forfeit all rights to such lien." We have
 construed this language to mean that a claimant who files an
 excessive lien forfeits
 
 26
 
 only mechanics' lien rights and remedies, nothing more.
 See E.B. Roberts Constr. Co., 704 P.2d at 863-64.
 
 
          ¶47
 Section 38-26-110's legislative history confirms the
 legislature's intent to mirror these restrictions. At
 both Senate and House committee hearings on the then-proposed
 legislation, proponents consistently characterized section
 38-26-110 as establishing the same limitations on claims
 under the Public Works Act as existed for liens under the
 Mechanics' Lien Act. See, e.g., Hearing on S.B.
 070 before the S. Bus. Affs. &Lab. Comm., 64th Gen.
 Assemb., 1st Sess. (Jan. 27, 2003) (statement of bill sponsor
 Senator Doug Lamborn that "Senate Bill 70 will give to
 public works projects the same requirements that are now
 found in our laws concerning private works projects" and
 testimony of John Bachmann, a representative from the
 Colorado Contractors Association, that section 38-26-110 is
 "exactly the same provision that's imposed upon an
 overstating claimant under the general Mechanics' Lien
 statute"); Hearing on S.B. 070 before the H. Bus. Affs.
 &Lab. Comm., 64th Gen. Assemb., 1st Sess. (Mar. 11, 2003)
 (statement of bill sponsor Representative Bob McCluskey
 stating that the penalty created by section 38-26-110
 "highlights what we've done in the Mechanics'
 Lien already").
 
 
          ¶48
 The intent to mirror the Mechanics' Lien Act's
 penalty provision is further supported by the
 legislation's title, "An Act Concerning Payment
 Procedures for a Public Works Construction Project, and, in
 Connection Therewith, Creating
 
 27
 
 Requirements for Contractors' Bonds that Are
 Consistent with Existing Mechanics' Liens
 Requirements Applicable to Private Projects." Ch.
 254, sec. 2, § 38-26-110, 2003 Colo. Sess. Laws 1690,
 1690-92 (emphases added); see also Frazier v.
 People, 90 P.3d 807, 811 (Colo. 2004) (noting that
 although a statute's title is not dispositive of
 legislative intent, it can serve as a useful aid in
 construing a statute).
 
 
          ¶49
 In sum, the legislative history of section 38-26-110 suggests
 a legislative intent that the scope of the forfeiture under
 the Public Works Act would mirror the scope of the forfeiture
 under the Mechanics' Lien Act and that, therefore, a
 claimant who files an excessive verified statement of claim
 forfeits only the statutory rights and remedies afforded by
 the statute.
 
 
          ¶50
 Consistent with this conclusion, the legislative history
 further emphasizes the legislature's intent in section
 38-26-110 to deter claimants from filing claims under the
 statute in bad faith, just as the Mechanics'
 Lien statute has historically been understood.
 Compare Hearing on S.B. 070 before the S. Bus. Affs.
 &Lab. Comm., 64th Gen. Assemb., 1st Sess. (Jan. 27, 2003)
 (Bill sponsor Senator Doug Lamborn noting that section
 38-26-110 "would just make it less likely that a
 subcontractor would inflate or overstate a claim because the
 penalties would be a little more stringent on that kind of
 bad faith action"), with Honnen Equip. Co. v. Never
 Summer Backhoe Serv., Inc., 261 P.3d 507, 512 (Colo.App.
 2011) (construing the purpose of the Mechanics' Lien
 Act's excessive claim provision as intending to
 
 28
 
 "punish[] and deter[] those who knowingly or deceptively
 claim amounts that are not due"); cf. Barnes v.
 Colo. Springs &C. C. D. Ry. Co., 94 P. 570, 573
 (Colo. 1908) (concluding that under the Mechanics' Lien
 Act, a claim of a lien for nonlienable articles "will
 not vitiate the claim, if it was not willfully false").
 The legislature thus signaled its intent in the Public Works
 Act to provide contractors and subcontractors on public works
 projects with expanded protections under the law by means of
 statutory remedies while establishing guardrails to prevent
 claims made in bad faith.
 
 
          ¶51
 We are not persuaded otherwise by Defendants' reliance on
 the differences between the language used in the
 Mechanics' Lien Act, which, as noted above, provides that
 a claimant who files an excessive lien forfeits "all
 rights to such lien," § 38-22-128
 (emphasis added), and the language used in the Public Works
 Act, which provides that a claimant who files an excessive
 claim forfeits "all rights to the amount
 claimed," § 38-26-110(1) (emphasis added). The
 different language was necessary because a mechanic's
 lien cannot be filed against a public property and thus the
 Mechanics' Lien Act cannot apply to public works
 projects. See City of Westminster, 940 P.2d at
 395-96; W. Metal Lath, 851 P.2d at 877. Accordingly,
 the legislature substituted "the amount claimed" (a
 reference to the verified statement of claim) for "such
 lien" (referring to the corresponding lien under the
 Mechanics' Lien Act). We perceive no intent, however, to
 undermine the legislative goal of
 
 29
 
 creating statutory remedies for contractors and
 subcontractors on public works projects that parallel those
 available to contractors and subcontractors on private
 projects, including the right to file a verified statement of
 claim that mirrors a mechanic's lien established by the
 Mechanics' Lien Act. Nor do we perceive anything in the
 legislative history to suggest that the legislature intended
 to alter the scope of the statutory forfeiture.
 
 
          ¶52
 The goals that the legislature sought to achieve by enacting
 the Public Works Act further support our determination that
 the statutory forfeiture in section 38-26-110 is limited
 solely to the statutory rights and remedies available under
 that Act. As noted above, the Public Works Act was enacted to
 protect suppliers of labor and materials for public
 works projects by providing them with statutory remedies for
 amounts due and unpaid. W. Metal Lath, 851 P.2d at
 877. To construe section 38-26-110 to punish contractors and
 subcontractors by stripping them of any and all avenues of
 relief would be contrary to this statutory purpose and
 undermine the legislative goals of the statute.
 
 
          ¶53
 Finally, as noted above, we must construe statutes to avoid
 illogical and absurd results. B.C.B., ¶ 24, 569
 P.3d at 79. Interpreting section 38-26-110 as Defendants
 suggest would lead to just such results. Rather than
 discouraging claimants from filing excessive claims in bad
 faith, claimants would likely be deterred from exercising
 their statutory remedies at all, lest they risk losing all
 
 30
 
 avenues for being made whole. Reading section 38-26-110 as
 requiring forfeiture of only statutory rights and remedies
 available under the Public Works Act thus better supports the
 legislature's intent and the purposes of that Act. Under
 such a construction, claimants will properly be deterred from
 filing excessive claims, but without the fear of losing all
 opportunity for recovery based on what might turn out to be
 the erroneous exercise of their statutory rights and
 remedies.
 
 
          ¶54
 Accordingly, we conclude that section 38-26-110's penalty
 for excessive claims is a claimant's forfeiture only of
 its statutory rights and remedies under the Public Works Act.
 
 
          III.
 Conclusion
 
 
          ¶55
 For the foregoing reasons, we conclude that disputed or
 unliquidated amounts, including delay and disruption damages,
 may lawfully be included in a verified statement of claim,
 provided that the claimed amounts otherwise fall within the
 statutory constraints of the Public Works Act. Thus, disputed
 or unliquidated amounts may lawfully be included when the
 claimed amounts represent labor, materials, sustenance,
 rental machinery, tools, equipment, or other supplies used in
 the prosecution of the work, and the inclusion of such
 amounts does not constitute an excessive claim under section
 38-26-110. Applying that determination to the facts presented
 here, we further conclude that the trial court did not
 clearly err in finding that Wadsworth's verified
 statement of claim
 
 31
 
 was not excessive. Finally, we conclude that a claimant who
 files an excessive claim pursuant to section 38-26-110 of the
 Public Works Act forfeits only the statutory rights and
 remedies created by the Act and not all rights and remedies
 otherwise available at law.
 
 
          ¶56
 Accordingly, we reverse the judgment of the division below
 and remand this case to the division with instructions to
 consider the additional issues that Wadsworth raised in its
 cross-appeal below and that the division did not address.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, we granted certiorari to
 review the following issues:
 
 
 1. Whether a claimant who files an excessive verified
 statement of claim under the Colorado Public Works Act,
 §§ 38-26-101 to -110, C.R.S. (2024), forfeits both
 its statutory remedies and all other available legal remedies
 or, as with an excessive lien claimant under the General
 Mechanics' Lien Act, forfeits its statutory remedies
 only.
 
 
 2. Whether a verified statement of claim under the
 Colorado Public Works Act may lawfully include disputed
 amounts, such as additional costs incurred by a subcontractor
 due to project delays and disruptions, or whether such claims
 are limited to undisputed, liquidated amounts.
 
 
 In its briefing before us, petitioner Ralph L.
 Wadsworth Construction Company, LLC ("Wadsworth")
 addressed these issues in reverse order, and we will do the
 same.
 
 
 ---------